## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors. | Chapter 11 |

EPIC Companies Midwest, LLC and
EPIC Companies Midwest 2023, LLC,

     Plaintiffs,

v.                             Adversary No. _____

SAD Downtown, LLC d/b/a The Firm,

     Defendant.

## COMPLAINT

Plaintiffs, EPIC Companies Midwest, LLC and EPIC Companies Midwest 2023, LLC (collectively, the "Plaintiffs"), for their Complaint against Defendant, SAD Downtown, LLC d/b/a The Firm (the "Defendant"), state and allege as follows:

### PARTIES

1.     EPIC Companies Midwest, LLC ("EPIC Midwest") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around

November 19, 2018. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.[1]

2.　　　EPIC Companies Midwest 2023, LLC ("<u>EPIC Midwest 2023</u>") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around August 15, 2022. Its principal place of business was also located at 400 10th Street SE, Minot, North Dakota, 58701.

3.　　　The Defendant is a limited liability company organized and existing under the laws of the State of North Dakota. The Defendant's principal place of business is located at 4840 Amber Valley Parkway South, Fargo, North Dakota, 58104.

4.　　　The Defendant owes funds to the Plaintiffs pursuant to certain loan transactions.

**JURISDICTION AND VENUE**

5.　　　The Plaintiffs filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") on July 8, 2024 (the "<u>Petition Date</u>"). The bankruptcy cases are currently pending before this Court.

6.　　　This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

7.　　　Venue is proper under 28 U.S.C. §§ 1408 and 1409.

8.　　　The Plaintiffs consent to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

9.　　　This Complaint is filed under Fed. R. Bankr. P. 7001.

---

[1] As of October 10, 2024, all the Plaintiffs' principal addresses changed to 900 Long Lake Road, Suite 180, c/o Lighthouse Management Group, Inc., New Brighton, Minnesota 55112-6455.

10.     The Plaintiffs are properly joined in this adversary proceeding under Fed. R. Civ. P. 20(a)(1), as incorporated by Fed. R. Bankr. P. 7020, as their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims involve common questions of law or fact.

## FACTUAL BACKGROUND

### I.     PLAINTIFFS' GENERAL STRUCTURE AND PURPOSE.

11.     The Plaintiffs are part of a series of affiliated companies known collectively as "EPIC Companies."

12.     EPIC Companies generally consist of the Plaintiffs, certain real estate holding entities, including the Defendant, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

13.     Each of the Plaintiffs were formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by subsidiaries of EPIC Companies (the "Project Companies").

14.     On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project.

15.     Based on records reviewed to date, each of the Project Companies appears to have a different ownership group.

16.     Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies.

17.     The Plaintiffs typically provided funds in the form of "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be junior to any bank debt but superior to the equity holders in each of the Project Companies.

18.     With funds received by the Plaintiffs from certain individual investors, the Plaintiffs made loans to the Project Companies.

19.     Most loans by the Plaintiffs to the Project Companies are documented by promissory notes but, on information and belief, some may be reflected solely in accounting records.

20.     The majority of the Sub Debt required the Project Companies to make monthly installment payments to the Plaintiffs and a final balloon payment on the applicable maturity date.

21.     On information and belief, the Defendant is one of the Project Companies. It has an ownership interest in a real estate development project located at 344 Sheyenne Street, Fargo, North Dakota 58078.

## II.     TRANSFERS TO THE DEFENDANT FROM EPIC MIDWEST.

22.     Between July 9, 2019, and March 19, 2020, Debtor EPIC Midwest and an entity called EPIC Skyline, LLC f/k/a Horace V17, LLC ("Horace") entered into several promissory notes:

| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge |
|---|---|---|---|---|---|---|
| EPIC Midwest | 7/1/19 | $50,000 | $0.00 | 7/1/2024 | 6.00% | .04 per $1 |
| EPIC Midwest | 1/1/20 | $455,000 | $2,464.58 | 1/1/2025 | 6.50% | .04 per $1 |
| EPIC Midwest | 3/1/20 | $400,000 | $2,166.67 | 3/1/2025 | 6.50% | .04 per $1 |

(collectively, the "Horace Notes").

23.     Through a series of transfers between April 24, 2020, and May 18, 2020, Horace transferred the balance of the loan proceeds from the Horace Notes to the Defendant.

24.    In recognition of these transfers and the Defendant's assumption of Horace's obligations to EPIC Midwest under the Horace Notes, Debtor EPIC Midwest and the Defendant entered into two promissory notes with the following balances as of June 30, 2024:

| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
|--------|------|-------------------|-----------------|---------------|----------|-------------|------------------|
| EPIC Midwest | 4/1/20 | $721,000 | $2,822.08 | 4/1/2020 | 6.50% | .04 per $1 | $538,609.78 |
| EPIC Midwest | 8/1/20 | $70,000 | $379.17 | 8/1/2022 | 6.50% | .04 per $1 | $72,366.02 |
| | | | | | | | **$610,975.80** |

(collectively, the "SAD Downtown Notes").

25.    Pursuant to the SAD Downtown Notes and the Horace Notes (collectively, the "EPIC Midwest Notes"), EPIC Midwest offered to loan $791,000 to the Defendant under certain terms and conditions and the Defendant accepted that offer. The EPIC Midwest Notes were unsecured.

26.    Under the terms of the EPIC Midwest Notes, the Defendant was required to make monthly payments to EPIC Midwest.

27.    The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the EPIC Midwest Notes.

28.    Between April 24, 2020, and August 19, 2022, the Defendant received transfers totaling of $781,439 pursuant to the EPIC Midwest Notes:

| Date of Transfer | Total Amount |
|------------------|--------------|
| 4/24/2020 | $197,887 |
| 5/18/2020 | $513,552 |
| 8/19/2022 | $70,000 |
| | **$781,439** |

(collectively, the "Midwest Transfers").

29.    Between April 24, 2020, and January 1, 2024, the Defendant only paid EPIC Midwest a total of $200,000 in principal and a total of $136,948.15 in interest.

30.    On or around January 2024, the Defendant ceased making payments to EPIC Midwest and defaulted under the EPIC Midwest Notes.

31.    Therefore, all amounts owed to EPIC Midwest by the Defendant became immediately due and payable.

32.    As of September 30, 2024, the Defendant owes EPIC Midwest a total of at least $620,963.70, which consists of $591,000 of principal, $28.811.25 of interest, and $1,152.45 of late fees, with interest and fees continuing to accrue.

33.    Before, during, and after the period from July 1, 2019 to August 19, 2022, EPIC Midwest had creditors, including various individual investors.

34.    On June 11, 2024, EPIC Midwest's board of directors appointed Lighthouse Management Group, Inc. ("Lighthouse") as its Chief Restructuring Officer.

35.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between July 1, 2019 and August 19, 2022, and at all relevant times between entry into the EPIC Midwest Notes and the Midwest Transfers to the Defendant, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

36.    Based on the financial records identified above and reviewed by Lighthouse, between July 1, 2019 and August 19, 2022, and at all relevant times between entry into the EPIC Midwest Notes and the Midwest Transfers to the Defendant, EPIC Midwest was insolvent or became insolvent thereafter.

### III.    TRANSFERS TO THE DEFENDANT FROM EPIC MIDWEST 2023.

37.    Between July 1, 2023, and December 1, 2023, Debtor EPIC Midwest 2023 and the

Defendant entered into several promissory notes with the following balances as of June 30, 2024:

| Lender | Date | Original Principal | Monthly Payment | Maturity Date | Interest | Late Charge | Total Amount Due |
|--------|------|--------------------|-----------------|---------------|----------|-------------|------------------|
| EPIC Midwest 2023 | 7/1/23 | $25,0000 | $166.67 | 7/1/2023 | 8.00% | .04 per $1 | $26,040.02 |
| EPIC Midwest 2023 | 8/1/23 | $25,000 | $166.67 | 8/1/2023 | 8.00% | .04 per $1 | $26,040.02 |
| EPIC Midwest 2023 | 9/1/23 | $50,000 | $333.33 | 9/1/2023 | 8.00% | .04 per $1 | $52,079.98 |
| EPIC Midwest 2023 | 10/1/23 | $18,000 | $120.00 | 10/1/2023 | 8.00% | .04 per $1 | $18,748.80 |
| EPIC Midwest 2023 | 11/1/23 | $11,000 | $73.33 | 11/1/2023 | 8.00% | .04 per $1 | $11,457.58 |
| EPIC Midwest 2023 | 12/1/23 | $210,000 | $1,225.00 | 12/1/2023 | 7.00% | .04 per $1 | $217,644.00 |
| | | | | | | | **$352,010.40** |

(collectively, the "EPIC Midwest 2023 Notes").

38.    Pursuant to the EPIC Midwest 2023 Notes, EPIC Midwest 2023 offered to loan

$339,000 to the Defendant under certain terms and conditions and the Defendant accepted that

offer. The EPIC Midwest 2023 Notes were unsecured.

39.    Under the terms of the EPIC Midwest 2023 Notes, the Defendant was required to

make monthly payments to EPIC Midwest 2023.

40.    The failure to make payments to EPIC Midwest 2023 as and when such payments

were due constitutes a default under the terms of the EPIC Midwest 2023 Notes.

41.    Between July 6, 2023, and December 5, 2023, and pursuant to the EPIC Midwest

2023 Notes, EPIC Midwest 2023 transferred a total of $339,000 to the Defendant:

| Lender | Date of Transfer | Total Amount |
|--------|------------------|--------------|
| EPIC Midwest 2023 | 7/6/23 | $25,000 |
| EPIC Midwest 2023 | 8/8/23 | $25,000 |
| EPIC Midwest 2023 | 8/24/23 | $50,000 |
| EPIC Midwest 2023 | 10/1/23 | $18,000 |
| EPIC Midwest 2023 | 10/23/23 | $11,000 |
| EPIC Midwest 2023 | 12/5/23 | $100,000 |
| EPIC Midwest 2023 | 12/5/23 | $110,000 |
| | | **$339,000** |

(collectively, the "2023 Transfers").

42.     Between July 1, 2023 and January 1, 2024, the Defendant only paid EPIC Midwest 2023 a total of $4,898.35 in interest.

43.     On or around January 2024, the Defendant ceased making payments to EPIC Midwest 2023 and defaulted under the EPIC Midwest 2023 Notes.

44.     Therefore, all amounts owed to EPIC Midwest 2023 by the Defendant became immediately due and payable.

45.     As of September 30, 2024, the Defendant owes EPIC Midwest 2023 a total of at least $358,515.60, which consists of $339,000 of principal, $18,765 of interest, and 750.60 of late fees, with interest and fees continuing to accrue.

46.     Before, during, and after the period from July 1, 2023 to December 5, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

47.     On June 11, 2024, EPIC Midwest 2023's board of directors appointed Lighthouse as its Chief Restructuring Officer.

48.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between July 1, 2023 and December 5, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the 2023 Transfers to the Defendant, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

49.     Based on the financial records identified above and reviewed by Lighthouse, between July 1, 2023 and December 5, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the 2023 Transfers to the Defendant, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

**IV.     PRIOR DEMAND FOR AMOUNTS OWED.**

50.     On August 1, 2024, the Plaintiffs caused a demand letter to be sent on their behalf to the Defendant demanding the amounts owed to the Plaintiffs under the EPIC Midwest Notes and the EPIC Midwest 2023 Notes.

51.     As of the date of this Complaint, the Defendant has failed to pay the Plaintiffs.

52.     The Plaintiffs continue to be harmed by the Defendant's failure to pay the outstanding amounts owed by the Defendant to the Plaintiffs.

53.     The Plaintiffs are still in the process of tracing all of their transfers to the various Project Companies. To the extent the Defendant further transferred funds to other Project Companies, the Plaintiffs expressly reserve the right to pursue additional claims against the Defendant and any subsequent transferees, including, but not limited to, claims under Chapter 5 of the Bankruptcy Code.

**COUNT I**
**BREACH OF CONTRACT**
**(EPIC Midwest v. Defendant)**

54.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

55.     Between July 1, 2019 and August 1, 2020, EPIC Midwest and the Defendant entered into the EPIC Midwest Notes.

9

56.     Under the terms of the EPIC Midwest Notes, EPIC Midwest agreed to provide the Defendant a total of $791,000; in exchange, the Defendant agreed to make regular monthly payments to EPIC Midwest.

57.     Between April 24, 2020, and October 19, 2022, and pursuant to the EPIC Midwest Notes, EPIC Midwest transferred a total of $781,439 to the Defendant.

58.     On or around January 2024, the Defendant ceased making payments to EPIC Midwest as required by the EPIC Midwest Notes.

59.     The Defendant's failure to make monthly payments to EPIC Midwest constitutes a breach of the EPIC Midwest Notes.

60.     Due to the Defendant's breach of the EPIC Midwest Notes, EPIC Midwest has been damaged in the amount of at least $620,963.70, plus interest and other fees and costs allowed by law and the EPIC Midwest Notes.

**COUNT II**
**BREACH OF CONTRACT**
**(EPIC Midwest 2023 v. Defendant)**

61.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

62.     Between July 1, 2023 and December 5, 2023, EPIC Midwest 2023 and the Defendant entered into the EPIC Midwest 2023 Notes.

63.     Under the terms of the EPIC Midwest 2023 Notes, EPIC Midwest 2023 agreed to provide the Defendant a total of $339,000; in exchange, the Defendant agreed to make regular monthly payments to EPIC Midwest 2023.

64.     Between July 1, 2023 and December 5, 2023, and pursuant to the EPIC Midwest 2023 Notes, EPIC Midwest 2023 transferred a total of $339,000 to the Defendant.

65.     On or around January 2024, the Defendant ceased making payments to EPIC Midwest 2023 as required by the EPIC Midwest 2023 Notes.

66.     The Defendant's failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the EPIC Midwest 2023 Notes.

67.     Due to the Defendant's breach of the EPIC Midwest 2023 Notes, EPIC Midwest 2023 has been damaged in the amount of at least $358,515.60, plus interest and other fees and costs allowed by law and the EPIC Midwest 2023 Notes.

## COUNT III
## UNJUST ENRICHMENT
### (EPIC Midwest v. Defendant)

68.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

69.     EPIC Midwest conferred a benefit to Defendant by providing $781,439 for use in the Defendant's real estate development project.

70.     The Defendant knowingly accepted the $781,439 from EPIC Midwest.

71.     As the Defendant did not make the agreed upon monthly payments to EPIC Midwest, the Defendant is not entitled to the benefit of the value of the $781,439 payment from EPIC Midwest.

72.     Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

73.     The amount of benefit wrongfully retained by the Defendant is in the amount of at least $591,000, plus interest and other fees and costs allowed by law.

## COUNT IV
## UNJUST ENRICHMENT
### (EPIC Midwest 2023 v. Defendant)

74.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

75.     EPIC Midwest 2023 conferred a benefit to Defendant by providing $339,000 for use in the Defendant's real estate development project.

76.     The Defendant knowingly accepted the $339,000 from EPIC Midwest.

77.     As the Defendant did not make the agreed upon monthly payments to EPIC Midwest 2023, the Defendant is not entitled to the benefit of the value of the $339,000 payment from EPIC Midwest 2023.

78.     Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

79.     The amount of benefit wrongfully retained by the Defendant is in the amount of at least $339,000, plus interest and other fees and costs allowed by law.

## COUNT V
## ACCOUNT STATED
### (EPIC Midwest v. Defendant)

80.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

81.     EPIC Midwest demanded payment of the Defendant's account with EPIC Midwest.

82.     The Defendant did not substantively respond to the demand letter or dispute any amounts.

83.     The Defendant did not pay the amounts due and owing to EPIC Midwest.

84.     As a result, EPIC Midwest has been damaged in the amount of at least $620,963.70, plus interest and other fees and costs allowed by law.

## COUNT VI
## ACCOUNT STATED
### (EPIC Midwest 2023 v. Defendant)

85.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

86.     EPIC Midwest 2023 demanded payment of the Defendant's account with EPIC Midwest 2023.

87.     The Defendant did not substantively respond to the demand letter or dispute any amounts.

88.     The Defendant did not pay the amounts due and owing to EPIC Midwest 2023.

89.     As a result, EPIC Midwest 2023 has been damaged in the amount of at least $358,515.60, plus interest and other fees and costs allowed by law.

## COUNT VII
## PROMISSORY ESTOPPEL
### (EPIC Midwest v. Defendant)

90.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

91.     The Defendant promised it would make regular monthly payments to EPIC Midwest.

92.     In reasonable reliance on those promises, EPIC Midwest loaned a total of $781,439 to the Defendant.

93.     EPIC Midwest was harmed by its reasonable reliance on the Defendant's promises, as EPIC Midwest loaned $781,439 to the Defendant and was not repaid.

94.     As a result, EPIC Midwest been damaged in the amount of at least $620,963.70, plus interest and other fees and costs allowed by law.

### COUNT VIII
### PROMISSORY ESTOPPEL
### (EPIC Midwest 2023 v. Defendant)

95.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

96.     The Defendant promised it would make regular monthly payments to EPIC Midwest 2023.

97.     In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $339,000 to the Defendant.

98.     EPIC Midwest 2023 was harmed by its reasonable reliance on the Defendant's promises, as EPIC Midwest 2023 loaned $339,000 to the Defendant and was not repaid.

99.     As a result, EPIC Midwest 2023 been damaged in the amount of at least $358,515.60, plus interest and other fees and costs allowed by law.

### COUNT IX
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest v. Defendant)

100.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

101.    EPIC Midwest entered into the EPIC Midwest Notes with the Defendant and made the Midwest Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest with a security interest in any collateral

and eventually only paid $336,948.15 to EPIC Midwest despite receiving $781,439 from EPIC Midwest.

102.     Before, during, and after the period from July 1, 2019 to August 19, 2022, EPIC Midwest had creditors, including various individual investors.

103.     Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between July 1, 2019 and August 19, 2022, and at all relevant times between entry into the EPIC Midwest Notes and the Midwest Transfers to the Defendant, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

104.     The Defendant was either the first or a subsequent transferee of the EPIC Midwest Notes and the Midwest Transfers.

105.     Based on the foregoing, the EPIC Midwest Notes and the Midwest Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

106.     Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT X
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest v. Defendant)

107.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

108.    EPIC Midwest entered into the EPIC Midwest Notes with the Defendant and made the Midwest Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $336,948.15 to EPIC Midwest despite receiving $781,439 from EPIC Midwest.

109.    Before and during the period from July 1, 2019 to August 19, 2022, EPIC Midwest had creditors, including various individual investors.

110.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between July 1, 2019 and August 19, 2022, and at all relevant times between entry into the EPIC Midwest Notes and the Midwest Transfers to the Defendant, EPIC Midwest was insolvent or became insolvent thereafter.

111.    The Defendant was the first or subsequent transferee of the EPIC Midwest Notes and the Midwest Transfers.

112.    Based on the foregoing, the EPIC Midwest Notes and the Midwest Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

113.     Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EPIC Midwest 2023 v. Defendant)**

114.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

115.     EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with the Defendant and made the 2023 Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $4,898.35 to EPIC Midwest 2023 despite receiving $339,000 from EPIC Midwest 2023.

116.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between July 1, 2023, and December 5, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the 2023 Transfers to the Defendant, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

117.     On information and belief, between July 1, 2023, and December 5, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the 2023 Transfers to the Defendant, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

118.    Based on the financial records identified above and reviewed by Lighthouse, between July 1, 2023, and December 5, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the 2023 Transfers to the Defendant, EPIC Midwest 2023 was insolvent or became insolvent as a result of the EPIC Midwest 2023 Notes and the 2023 Transfer.

119.    The Defendant was the initial transferee of the EPIC Midwest 2023 Notes and the 2023 Transfers.

120.    Based on the foregoing, the EPIC Midwest 2023 Notes and the 2023 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

121.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest 2023 v. Defendant)

122.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

123.    EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with the Defendant and made the 2023 Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $4,898.35 to EPIC Midwest 2023 despite receiving $339,000 from EPIC Midwest 2023.

18

124.    Before, during, and after the period from June 1, 2023 to July 1, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

125.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between June 1, 2023 and July 1, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the 2023 Transfers to the Defendant, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

126.    The Defendant was the first transferee of the EPIC Midwest 2023 Notes and the 2023 Transfers.

127.    Based on the foregoing, the EPIC Midwest 2023 Notes and the 2023 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

128.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XIII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EPIC Midwest 2023 v. Defendant)

129.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

130.     EPIC Midwest 2023 entered into the EPIC Midwest 2023 Notes with the Defendant and made the 2023 Transfers to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $4,898.35 to EPIC Midwest 2023 despite receiving $339,000 from EPIC Midwest 2023.

131.     Before and during the period from June 1, 2023 to July 1, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

132.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between June 1, 2023 and July 1, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Notes and the 2023 Transfers to the Defendant, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

133.     The Defendant was the first transferee of the EPIC Midwest 2023 Notes and the 2023 Transfers.

134.     Based on the foregoing, the EPIC Midwest 2023 Notes and the 2023 Transfers are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

135.     Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

A.     Enter judgment in favor of the Plaintiffs on their claims against the Defendant;

B.     Award the Plaintiffs their attorney's fees and costs for pursuing this action as allowed by applicable law and the EPIC Midwest Notes and EPIC Midwest 2023 Notes;

C.     Grant such other relief that the Court deems just and equitable.

Dated:  November 1, 2024

/e/ *Steven R. Kinsella*

Michael S. Raum (#05676)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND  58102-4991
701.237.8200
mraum@fredlaw.com

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice*, MN #0402772)
**FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
612.492.7000
skinsella@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## **AFFIDAVIT**

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Chief Restructuring Officer for EPIC Companies Midwest, LLC and EPIC Companies Midwest 2023, and I declare under penalty of perjury that the facts set forth in the preceding Complaint are true and correct, according to the best of my knowledge, information, and belief.

Dated:  November 1, 2024

/s/ _PATRICK FINN_

Patrick Finn
Partner, Lighthouse Management Group, Inc.
Chief Restructuring Officer for the Plaintiffs